RUTH B. BELDEN, Respondent, *v.* DANIEL S. BELDEN, Appellant.

Third Department, January 9, 1924.

Husband and wife — separation — grounds for separation under Civil Practice Act, § 1161, not shown.

In an action for separation by a wife, based on all the grounds specified in section 1161 of the Civil Practice Act, the proof is not sufficient to warrant a judgment in favor of the plaintiff, where it appears that the parties after two years of apparently pleasant marital relations, with the exception of an occasional outbreak of temper on the part of the husband, not different or more violent than that which commonly occurs in the average household, the defendant quit his job as a chemist after a reduction of about one-half in his salary and the parties returned to this State, where they stayed at the home of the plaintiff's parents; that while living with plaintiff's parents, the defendant was more or less irritable and had several disputes, principally with the parents of the plaintiff, but in no case was the defendant guilty of any violence; that the defendant, after a dispute with plaintiff's parents, left their home and went to his mother's home, but before leaving he urged his wife to go with him which she refused to do; that on the same day he returned to the home of his wife's parents and finding her absent went to a neighbor's house where she was calling and tried to induce her to go with him to his mother's home to talk matters over; that she refused and he then took hold of her arm and apparently tried to force her to leave the house but being unable to do so he departed after an hour's conversation; that in the struggle she was injured slightly; and that the defendant thereafter continued to urge his wife to come back to him and promised that if she would do so he would make a home for her separate from the parents of either of them, but she persistently refused to return to him.

35

APPEAL by the defendant, Daniel S. Belden, from an interlocutory judgment (so named in the record) and a final judgment (so named in the record) of separation in favor of the plaintiff, entered in the office of the clerk of the county of Chenango on the 6th day of May, 1922, and the 7th day of September, 1922, respectively, upon the decision of the court rendered after a trial before the court without a jury, and also from an order entered in said clerk's office on the 3d day of April, 1922, requiring the defendant to pay temporary alimony and counsel fees.

*Minnie L. Seeley* [*Hubert L. Brown* of counsel], for the appellant.

*David F. Lee,* for the respondent.

HINMAN, J.:

The plaintiff contends that the defendant is an ill-tempered, vicious man; that his treatment of her was unbearable and that as a consequence while with the defendant the plaintiff led a life of misery; that his ill-treatment of her culminated after a married life of two years when the defendant by physical force tried to take the plaintiff away from a place where she was visiting to the home of his mother; that in so doing he seriously injured the plaintiff by pulling her against the door casing, injuring one of her limbs and her arms and causing injuries across her abdomen to such an extent that he caused premature birth of a child; that he was also guilty of abandonment and of neglect and refusal to provide for her. In fact, the plaintiff claims that the judgments are sustainable under all of the four grounds mentioned in section 1161 of the Civil Practice Act.

While we can find testimony sustaining a contention that the defendant at times was ill-tempered, the record shows that his ill-temper was unattended by any acts which would constitute cruel and inhuman treatment or render it unsafe and improper for her to cohabit with him with the one possible exception when, it is alleged, he laid his hands forcibly upon her to her injury as above noted. We, therefore, disapprove, as immaterial the findings numbered 4, 5, 6 and 8. We also disapprove of findings numbered 7, 9, 10, 11 and 16, as unsustained by the testimony and the reasonable inferences deducible therefrom.

In spite of a hasty marriage, when the defendant was not financially ready to undertake it, the parties succeeded in establishing themselves in a comfortable home in Peoria, Ill., where he was employed as a chemist at a monthly salary of $115 to $150. By dint of co-operation they were able to repay the borrowed money with which they started and to purchase their furniture and to

save about $600 during their two years' stay in that place. The plaintiff became pregnant during the second summer of their stay there. Outside of an occasional outbreak of temper on her husband's part, not uncommon in the average household, during which he evidenced no violence toward her but largely a disposition to refrain from conversation with her and manifested other eccentricities for a day or so after the outbreak, their relations were apparently pleasant. His mother visited them for a few weeks during the second summer. One incident during her stay seems to have disturbed the plaintiff at the time but it was a trifling thing and the defendant consoled her and treated her kindly. Relations with the defendant's mother were not estranged by her visit because shortly after the mother's return the plaintiff wrote her an affectionate letter and sent her Christmas gifts made by herself. About February first of the following year the defendant's employer made a general salary cut due to poor business. The defendant's salary was reduced about one-half. This with the approaching birth of a child to them led to their selling their furniture and returning to Norwich, N. Y., where they stayed at the home of the plaintiff's parents. The defendant tried to obtain employment in his chosen profession and could have obtained it at Buffalo, but the plaintiff wanted him to be near her during her confinement and there was no opening for him at Norwich. He did some work around the premises of the plaintiff's parents. It is claimed by the plaintiff that there were times during February and March, while they were so living, the defendant was illtempered toward her and her father and mother and that they had great difficulty in getting him to his meals when they were served. There were several disputes, particularly with her parents, but unattended by violence, and finally on March thirtieth the plaintiff's mother took him to task for not coming to his meals after she had prepared them. There is a conflict in the testimony as to just what she said to him. It resulted, however, in his leaving the house with some of his personal effects and going to his mother's home in Norwich. He did not leave, however, without urging his wife to go with him. She admits that he put his arm around her and wanted her to go with him. He had no quarrel with his wife. She refused to go with him. He returned the same afternoon for some of his property and at that time found her feeling so badly that he had to help her move across the room. Later in the afternoon he again returned, but to his surprise found his wife, who had been feeling so poorly, had gone out. He found that she was visiting at the house of a friend, a Mrs. Myers, who lived near his mother's home. He went to Mrs. Myers' house. His wife came to the

door. She herself testified that he said: "Ruth, I want you to put your things on and come over to my mother's and hear what she has to say, and if you don't like it you don't have to stay." She refused. She says that without further provocation he grabbed her by the right arm and pulled her toward the doorway, but she had her left hand on the door knob and she struck her right thigh against the door casing, where she "stuck;" that he then grabbed both of her arms and he pulled one way while she pulled the other until Mrs. Myers requested him to stop. He says that she started to slam the door in his face after refusing his request. It is not unreasonable to suppose that his grabbing her by the arm was to insure a longer opportunity to discuss her refusal of his request. Undoubtedly there was some struggle but if she was bruised it is as likely that her efforts to disengage herself from his grasp produced them as that he produced them. It was an indiscreet thing for him to do, but the record is barren of proof indicating that he intended to injure her. It was a tense moment in his life. His family was being broken up. Relations with her parents had been strained. It was natural for him to wish his wife to consider living with his mother. He was temporarily out of employment and she was soon to go to the hospital. She was unwilling to even talk the matter over with his mother. It was at best a situation wherein she preferred to finish a visit with a friend rather than to do her part toward adjusting a critical situation in their lives. Making due allowances for her delicate condition, we think that her attitude was arbitrary and provoked him to indiscretion. We cannot say that he used more force than was reasonably necessary to overcome her resistance to his efforts to hold her within reach so that he might continue to talk to her. He followed her when she backed into the house. He stayed an hour. He continued to urge her to accompany him to his mother's, but she continued to refuse, even if accompanied by her friend Mrs. Myers. She even invited him to go back with her to her parents' home in the taxi which was ordered to take her home. Her theory of cruel and inhuman treatment was apparently an afterthought. He visited her that night and the next day at her parents' home and she admits that either that night or the next day she told him she might go to live with him to a home which he furnished. It is claimed that the struggle at Mrs. Myers' home produced a premature birth of the child, but we can find no evidence to sustain the finding that the birth was premature. He was permitted to see her but once at the hospital. After her return to her parents' home he was denied the opportunity to see her or the child. He wrote her several letters pleading for a reconciliation. He offered to establish a

home of their own, separate from the parents of either of them. He urged that she should go with him to a minister of religion, a mutual friend, to " talk it over with him and see if he cannot suggest the right way out of our troubles." His efforts at reconciliation were spurned. It is urged that his letters were inspired by his attorney as a means of defense to such an action as this but they so tend to carry out his attitude at the time of the break, when she refused to accompany him from her parents' home, that we cannot ignore the apparent earnestness and sincerity of their appeal.

Our conclusion is that he did not leave her under circumstances constituting abandonment; that his subsequent neglect to provide for her and the child was justified by her own unconciliatory attitude, her refusal to live with him; that he was not cruel and inhuman in his treatment of her and did not so conduct himself toward her as to render it unsafe and improper for her to cohabit with him, within the meaning of the statute. Therefore, she is not entitled to the relief sought by her. The judgments and order should be reversed upon the law and the facts and the complaint dismissed, without costs. The court disapproves of findings numbered respectively 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 and 16 and finds that the defendant was not guilty of cruel and inhuman treatment of the plaintiff; that there was no conduct on the part of the defendant toward the plaintiff such as to render it unsafe and improper for the former to cohabit with the latter; that the defendant did not abandon the plaintiff, and that there was no neglect or refusal of the defendant to provide for the plaintiff.

All concur.

Judgments and order reversed on the law and facts and complaint dismissed, without costs. The court disapproves of findings of fact numbered respectively 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 and 16; and finds that the defendant was not guilty of cruel and inhuman treatment of the plaintiff; that there was no conduct on the part of the defendant toward the plaintiff such as to render it unsafe and improper for the former to cohabit with the latter; that the defendant did not abandon the plaintiff, and that there was no neglect or refusal of the defendant to provide for the plaintiff.